UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CHYREL LEWIS, JORDAN LEWIS, JOHN LEWIS AND JUSTIN LEWIS (CHYREL LEWIS AS CURATRIX OF JUSTIN LEWIS) | CIVIL ACTION<br><br>20-512-SDD-SDJ |
| VERSUS | |
| ABBOTT LABORATORIES, d/b/a, ST. JUDE MEDICAL, LLC | |

**RULING**

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant, Abbott Laboratories ("Defendant"). Plaintiffs Chyrel Lewis, Jordan Lewis, John Lewis, and Justin Lewis ("Plaintiffs") filed an *Opposition*,[2] to which Defendant filed a *Reply*.[3] For the following reasons, Defendant's *Motion* shall be granted.

**I.    BACKGROUND**

This is a products liability case. The following facts are derived from the "*First Amended and Supplemental Petition for Damages Complaint*."[4] In February 2014, James Lewis underwent a surgical implantation of a Trifecta heart valve model 23-A, which Defendant manufactured.[5] On June 23, 2019, James Lewis was admitted to the emergency room of Our Lady of the Lake Regional Medical Center with complaints of

---

[1] Rec. Doc. No. 17.
[2] Rec. Doc. No. 21.
[3] Rec. Doc. No. 22.
[4] Rec. Doc. No. 13. The Court will construe the *Petition* as a *Complaint* for the purposes of this *Ruling*. Also, Plaintiffs' *First Amended and Supplemental Petition* merely provides notations to the first *Petition* without reproducing the substance of the first *Petition*. The Court will therefore cite primarily to the first *Petition* for the purposes of this *Ruling*. Rec. Doc. No. 1-1. If Plaintiffs file another *Complaint*, it should be titled properly and reproduce in full the substance of the prior *Petitions* that Plaintiffs continue to rely on.
[5] Rec. Doc. No. 1-1, p. 1.

chest pain and shortness of breath.[6] On June 25, 2019, a "transthoracic echocardiogram study demonstrated calcification of the bioprosthetic leaflets with evidence of prosthetic valve dysfunction and severe aortic stenosis."[7] On June 26, James Lewis was discharged with plans for a CT scan the next day.[8] On the next day, June 27, James Lewis went to Louisiana Cardiology Associates with complaints of shortness of breath with minimal exertion, hypotension, and increased creatine.[9] On June 28, James Lewis collapsed in his hospital room and was prepared for emergency surgery.[10] The surgery was unsuccessful, and James Lewis died of "severe bioprosthetic aortic valve stenosis with acute renal failure, pulmonary edema, and cardiogenic shock."[11] James Lewis left a surviving spouse, Cheryl Lewis, and sons John Lewis, Jordan Lewis, Justin Lewis.[12]

Plaintiffs sued under the Louisiana Products Liability Act ("LPLA")[13] asserting four theories: (1) design defect, (2) failure to warn, (3) mismanufacture, and (4) breach of express warranty.

## II.  LAW AND ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[14] The Court may consider "the complaint, its proper attachments, documents incorporated into the

---

[6] *Id*.
[7] *Id*.
[8] *Id*.
[9] *Id*. at 2.
[10] *Id*.
[11] *Id*.
[12] *Id*.
[13] La. R.S. 9:2800.51 *et seq*.
[14] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

complaint by reference, and matters of which a court may take judicial notice."[15] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[16]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[17] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[18] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[20] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[21] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[22]

---

[15] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[17] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[19] *Id*.
[20] *Id*.
[21] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[22] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

### B. Medical Device Preemption

In 1976, Congress amended the Food, Drug, and Cosmetic Act and reclassified medical devices into three categories based on the potential risk to the public.[23] Relevant here are Class III devices, which are those that present "a potential unreasonable risk of illness of injury" or which are "purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health…"[24] The manufacturer of a Class III device must give the Food and Drug Administration ("FDA") "reasonable assurance" that the device is both safe and effective before the manufacturer can put the device on the market.[25] The manufacturer provides that "reasonable assurance" through the premarket approval ("PMA") process, and the FDA's involvement with the device continues even after the PMA process is complete.[26]

Congress expressly preempted state law causes of action that establish "requirements" which are "different from, or in addition to" federal requirements.

21 U.S.C. § 360k provides:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

The Supreme Court in *Riegel v. Medtronic*[27] held that state tort law imposes requirements that are "different from, or in addition to" if: (1) "the Federal Government has

---

[23] *Gomez v. St. Jude Med. Daig Div. Inc*., 442 F.3d 919, 928 (5th Cir. 2006).
[24] *Id*. (cleaned up).
[25] *Id*. (internal citations omitted).
[26] *Id*.
[27] 552 U.S. 312, 321–24 (2008).

established requirements applicable to" the challenged medical device, and (2) the state law requirements are "different from, or in addition to" those requirements and "relate to safety and effectiveness."[28] States, however, are free to impose duties that "parallel, rather than add to, federal requirements" such as by "providing a damages remedy for claims premised on a violation of FDA regulations…"[29] The Fifth Circuit has instructed that district courts must "look through the general duties imposed by the state-law causes of action and consider the effect a successful lawsuit asserting those causes of action would have and determine whether they threaten the federal PMA process requirements."[30]

Defendant argues that the first prong is met in this case because the Trifecta heart valve completed the PMA process, and Plaintiffs fail to oppose that argument. As stated in *Riegel*, the PMA process imposes "requirements" because the FDA "requires a device that has received premarket approval to be made with almost no deviations from the specifications in its approval application…"[31] Further, the Court takes judicial notice of an FDA document Defendant offers that establishes that the Trifecta heart valve completed the PMA process.[32] The Court concludes that the FDA established "requirements" as to the Trifecta heart valve as required by *Riegel*.

Therefore, the Court must determine whether Plaintiffs seek to impose "requirements" on the Trifecta heart valve that are "different from, or in addition to" the requirements that the FDA imposed during the PMA process. The issue turns on two

---

[28] *Id*. at 321–22.
[29] *Id*. at 330. (internal citations omitted).
[30] *Gomez*, 442 F.3d at 929.
[31] 552 U.S. at 323.
[32] *Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011); *See* Rec. Doc. No. 18-1.

relatively simple questions: (1) have Plaintiffs stated a claim under state law? and (2) if so, did Defendant's actions that Plaintiffs complain of violate FDA regulations or the FDA's specifications for the Trifecta heart valve? If the answer to the first question is "no," then Plaintiffs have failed to state a claim under Fed. R. Civ. P. 12(b)(6). If the answer to the second question is "no," then Plaintiffs are trying to impose requirements on Defendant that are "different from, or in addition to" federal requirements, and the claim is preempted.

The contents of the PMA file, including the FDA's specifications for the Trifecta heart valve, are confidential, which puts Plaintiffs in a difficult position. They must allege a violation of one of the FDA-imposed requirements in the file, but they cannot see the file. Cognizant of this quandary, the Fifth Circuit held in *Bass v. Stryker Corp.* that a products liability plaintiff seeking to hold the manufacturer of a Class III medical device liable may plead that the manufacturer failed to comply with the specific processes and procedures approved by the FDA and detailed in the PMA file or that the manufacturer failed to comply with the FDA's Current Good Manufacturing Practices ("CGMPs").[33] In either case, the plaintiff must allege causation by connecting the manufacturer's failure to adhere to either set of standards to the plaintiff's injury.[34] With that background in place, the Court analyzes Plaintiffs' claims under *Bass* and Fed. R. Civ. P. 12(b)(6).

1. <u>Design Defect</u>

Plaintiffs assert a design defect claim under the LPLA. La. R.S. § 9:2800.56 provides:

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

---

[33] *Bass v. Stryker Corp.*, 669 F.3d 501, 512 (5th Cir. 2012).
[34] *Id.*

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

Therefore, a plaintiff asserting a design defect claim under the LPLA is directly attacking the design of the product. In *Gomez v. St. Jude Medical Daig Division, Inc.*[35] the Fifth Circuit squarely held that design defect claims under the LPLA against the manufacturer of a Class III medical device are preempted:

> The FDA studied the Angio–Seal design through the PMA process and approved it. To permit a jury to second-guess the Angio–Seal design by applying the Louisiana statutory standard for unreasonably dangerous design would risk interference with the federally-approved design standards and criteria. The district court judge correctly found that federal law preempted this state-law challenge to the design of the Class III FDA-approved Angio–Seal.

Since Plaintiffs attack the FDA-approved design, they necessarily attempt to impose requirements that are "in addition to, or different from" the FDA's requirements. Plaintiffs' design defect claim is thus preempted.

### 2. Mismanufacture

Plaintiffs assert a mismanufacture claim under the LPLA. La. R.S. § 9:2800.55 provides:

> A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.

---

[35] 442 F.3d 919 (5th Cir. 2006).

Plaintiffs do not identify what standards Defendant failed to follow when manufacturing the Trifecta heart valve. And, while the Court understands that Plaintiffs may not have access to the exact specifications because they are in the confidential PMA file, Plaintiffs could still allege what CGMPs Defendant violated during the manufacturing process as the *Bass* court instructed. Plaintiffs also have not plausibly alleged how any alleged mismanufacture caused James Lewis's injuries. Plaintiffs fail to plausibly plead a non-preempted mismanufacture and fail to plausibly plead a mismanufacture claim under Fed. R. Civ. P. 12(b)(6). Plaintiffs' mismanufacture claim is dismissed.

3. Failure to Warn

Plaintiffs assert a failure to warn claim under the LPLA. La. R.S. § 9:2800.57 provides:

> A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.[36]

Further:

> A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.[37]

Plaintiffs have failed to cite to CGMPs or the requirements contained within the PMA file as required by *Bass*. For that reason alone, this claim must be dismissed as preempted.

---

[36] La. R.S. § 9:2800.57(A).
[37] La. R.S. § 9:2800.57(C).

However, Plaintiffs also fail to allege how the warning was inadequate and how it contributed to James Lewis's death. Therefore, Plaintiffs' failure to warn claim must be dismissed under Fed. R. Civ. P. 12(b)(6) as well.

### 4. Express Warranty

Plaintiffs assert a breach of express warranty claim under the LPLA. La. R.S. § 9:2800.58 provides:

> A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.

Plaintiffs have failed to cite to CGMPs or the requirements contained within the PMA file as required by *Bass*. For that reason alone, this claim must be dismissed as preempted. Additionally, Plaintiffs also fail to allege any warranty Defendant made to them. In the absence of an alleged warranty, the Court cannot draw the inference that Defendant did not conform to that warranty. Therefore, Plaintiffs' breach of express warranty claim must be dismissed under Fed. R. Civ. P. 12(b)(6) as well.

## III. CONCLUSION

The *First Amended and Supplemental Petition for Damages* is dismissed without prejudice. Plaintiffs will have 21 days from the date of this *Ruling* to file a *Second Amended Complaint* to cure the deficiencies therein, to the extent possible. If Plaintiffs do not cure the deficiencies, this dismissal will convert to a dismissal with prejudice.

Plaintiffs also appear to request preliminary discovery to obtain the PMA file.[38] The Court denies Plaintiffs' request. The *Bass* court made it clear that a plaintiff can

---

[38] Rec. Doc. No. 21, p. 9.

adequately plead a complaint that avoids preemption and states a claim without the PMA file.

Defendant's *Motion to Dismiss*[39] is granted.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on September 28, 2021.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[39] Rec. Doc. No. 17.